IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MDL 1546 IN RE MEDICAL WASTE SERVICES ANTITRUST LITIGATION | |
| This Document Relates to: | MEMORANDUM DECISION AND ORDER |
| *Sorensen v. Stericycle,* **Case No. 2:03CV179** | |
| | 2:03MD1546 DAK |
| *Comprehensive Addiction Treatment Services, Inc. v. Stericycle,* **Case No. 2:03CV784** | |
| *Haas, DPM v. Stericycle*, **Case No. 2:03CV795** | |
| *Arizona Eye Center v. Stericycle*, **Case No. 2:03CV887** | |
| *Stoll v. Stericycle*, **Case No. 2:03CV968** | |

This matter is before the court on Plaintiffs' Consolidated Motion for Class Certification. A hearing on the motion was held on October 28, 2005. At the hearing, Stericycle, Inc. ("Stericycle") was represented by Raymond J. Etcheverry. Plaintiffs were represented by Bernard Persky. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the motion. Now being fully advised, the court

renders the following Memorandum Decision and Order.

## I. BACKGROUND

### A. The Proposed Tri-State Class Action

The proposed Tri-State Class Action Plaintiffs allege that Stericycle engaged in a conspiracy with the purpose and effect of impermissibly allocating customers and geographic territories, monopolizing markets, and committing other unlawful practices designed to restrain competition and increases prices of collection, transport, and lawful disposal of medical waste products in the states of Utah, Arizona, and Colorado ("Medical Waste Services") charged to Plaintiffs and the proposed class, from November 1, 1997 to the present.[1]  Plaintiffs claims that Stericycle's acts constitute violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1, 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18.

Plaintiffs contend that, before November 1997, Defendants Stericycle and BFI were the two largest companies in Utah, Arizona, and Colorado in the market for Medical Waste Services and were in direct competition with each other.  Together, Plaintiffs claim, the two companies held the dominant share of the Medical Waste Services markets in these states.   From November 1, 1997 until the present time (the "Class Period"), Plaintiffs allege that Defendants engaged in illegal anticompetitive conduct by, among other things, allocating markets and equipment so that Defendants were no longer in competition with each other and dividing geographic territories,

---

[1] The "Tri-State Class Action" includes: *Arizona Eye Center v. Stericycle, Inc. et al.* (2:03CV887); *Comprehensive Addiction Treatment Services, Inc. et al. v. Stericycle, Inc. et al.* (2:03CV784); *Mark Haas, D.P.M. et al. v. Stericycle, Inc. et al.* (2:03CV795); and *Thomas W. Sorensen v. Stericycle, Inc. et al.* (2:03CV179).

and then exploiting their resulting monopoly to charge supra-competitive prices, to the detriment of Plaintiffs and the proposed class.

Specifically, Plaintiffs claim that, by agreements dated November 24, 1997 and December 15, 1997, (the "Market Division Agreements"), BFI and Stericycle agreed to cease competing with each other in Utah, Arizona, and Colorado for Medical Waste Services. In the Market Division Agreement, Stericycle and BFI agreed to divide between them existing and future customers, vehicles, equipment, and employees. In addition, they agreed to allocate exclusive geographic territories to each other and promised not to compete against each other within those exclusive territories. Pursuant to the Market Division Agreements, BFI transferred to Stericycle 2,520 of BFI's commercial Medical Waste Services customers in Arizona, and Stericycle transferred to BFI 264 customers in Utah and 1,362 customers in Colorado, for a total of 1,626 customers.

According to Plaintiffs, during the months and years following the alleged conspiracies to divide markets and allocate customers, Defendants committed numerous overt acts in furtherance of the conspiracies to restrain trade and to monopolize the Relevant Geographic Market (Utah, Colorado, and Arizona) for Medical Waste Services. On November 12, 1999, Stericycle bought out BFI's Medical Waste Services business in Utah, Arizona, Colorado, and elsewhere. Plaintiffs contend that once this was accomplished, Stericycle cancelled third-party hauler contracts in Utah, forcing them to find other, more expensive disposal outlets.

On August 14, 2002, Stericycle agreed to settle antitrust charges filed by the Arizona Attorney General and to pay $320,000 in civil penalties and costs. It further agreed to provide

up to 50,000 pounds per month of incineration treatment services for third-party haulers at its Arizona facility and was required to issue 25% rebates for the next two years to certain companies that had previously been excluded by Stericycle's alleged anticompetitive practices.

On January 13, 2003, Stericycle and BFI agreed to settle antitrust charges filed by the Utah Attorney General, and to pay a civil penalty of $580,000, costs in the amount of $150,000, and an additional $100,000 contribution to a fund to increase competition in the Medical Waste Services industry. Stericycle agreed to change its alleged anticompetitive practices by limiting its use of long-term contracts, eliminating exclusive disposal contracts, and opening up its Utah incinerator to previously restricted third-party haulers.

The Tri-State Plaintiffs have all purchased Medical Waste Services from Stericycle. They claim they have been economically injured in the prices they pay for such services, which, they claim, have been artificially raised to supra-competitive levels through the conduct of Stericycle.

**B. The Proposed California Class Action:**

In the proposed California Class Action, Plaintiff David M. Stoll, M.D. ("Stoll"), alleges that Stericycle has monopolized the market for the collection, transport and lawful disposal of Medical Waste produces charged to him and other customers in the state of California, from the date four years prior to the filing of this action to the present (the "California Class Period"). Stoll claims that Stericycle has violated Section 2 of the Sherman Act, 15 U.S.C, § 2, Section 7 of the Clayton Act, 15 U.S.C. § 18, and the California Business and Professions Code §§ 17200 *et seq*.

As in the proposed Tri-State Class Action, Stoll asserts that Stericycle has pursued a nationwide strategy of buying out competitors in Medical Waste Services to achieve and enjoy monopoly profits. Stoll claims that Stericycle has bought out competitors with operating incinerators, and that its largest acquisition was that of BFI Waste System of North American, Inc. ("BFI"), in November 1999. Then, in December 2001, according to Stoll, Stericycle bought out its last remaining competitor who owned and operated an incinerator in California, Integrated Environmental Systems, Inc. ("IES"). Stoll claims that since that time, Stericycle has required competitors who provide hauling services to transport medical waste to Stericycle's incinerators in Utah and Arizona. This strategy, Stoll contends, has allowed Stericycle to monopolize the market for Medical Waste Services, increasing its prices for collection, treatment and disposal to supracompetitive levels. Moreover, according to Stoll, Stericycle charges haulers who deliver to Stericycle's incinerators more in incineration costs that it charges it own customers for collection and incineration combined.

During the California Class Period, Stoll alleges that Stericycle engaged in illegal anticompetitive conduct by, among other things, acquiring its main competitor in California, BFI, and its only competitor in the provision of incinerator services, IES, and then using that position to monopolize the Medical Waste Services market, charging supracompetitive prices for inferior services, to the detriment of Stoll and the proposed class.

**C.  The Proposed Classes**

The Tri-State Plaintiffs and Stoll seek an Order certifying two classes in this action.

**The Tri-State Class:**

All persons and entities in the United States (including the District of Columbia and Puerto Rico) who, at any time from November 1997 to the present, paid Stericycle and/or its unnamed co-conspirators for the collection, transport and/or unlawful disposal of medical waste products in the states of Utah, Arizona and Colorado. Excluded from the Class are governmental entities, Stericycle and its unnamed co-conspirators, and their respective parents, subsidiaries and affiliates.

**The California Class:**

All persons and entities in the United States (including the District of Columbia and Puerto Rico) who, at any time from four years prior to the filing of this action to the present, paid Stericycle for the collection, transport and/or lawful disposal of medical waste products in the state of California. Excluded from the Class are governmental entities, and Stericycle and its subsidiaries and affiliates.

## II.  LEGAL STANDARDS

The standards for certifying a class action are set forth in Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). This rule requires all four prerequisites of Rule 23(a) and at least one of the three requirements of Rule 23(b) to be satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Integra Realty Res.*, 354 F.3d 1246, 1262 (10th Cir. 2004).

Rule 23(a) requires that the elements of numerosity, commonality, typicality, and adequacy of representation are satisfied with respect to the proposed classes. For purposes of this motion, Stericycle does not dispute that the requirements of Rule 23(a) have been satisfied. The dispute in this case is focused on whether the requirements of Rule 23(b)(3) have been satisfied.

To certify a class under Rule 23(b)(3), the court must find that: (1) common questions

predominate over questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  To meet the predominance requirement, a plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . . predominate over those issues that are the subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2nd Cir. 2001) (internal quotations and citations omitted).

While Plaintiffs seek certification of the two proposed classes identified above, Defendants argue that the court should not certify either of the two classes under Rule 23(b)(3) class because individual rather than common issues will predominate.  For the reasons explained below, the court agrees with Stericycle and finds that class certification under Rule 23(b)(3) is not appropriate.

## III.    DISCUSSION

The court must perform a rigorous analysis of whether the proposed class satisfies the requirements of Rule 23.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988) (party seeking to certify a class is under a strict burden of proof to show that all of the requirements are met); *In re Universal Serv. Fund Tele. Billing Practices Litig.*, 219 F.R.D. 661, 665 (D. Kan. 2004) (same).   The court should accept the allegations in the complaint as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . .  consider the legal and factual issues presented by plaintiff's

complaints." *Hart*, 186 F.3d at 1290 n.7 (quotation omitted; brackets in original). The court may look beyond the pleadings to the evidence relevant to a plaintiff's claims. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 (10th Cir. 1999). The court, however, may not inquire into the merits of the case. *In re Visa Check/MasterMoney Antitrust* Litig., 280 F.3d 124, 135 (2nd Cir. 2001); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982). In addition, any doubt should be resolved in favor of class certification. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

### A. Plaintiffs' Arguments

Plaintiffs argue that common issues predominate over individual questions in this action. They contend that common evidence can be used to make their required showing of (1) antitrust liability; (2) antitrust impact; and (3) antitrust damages. First, they assert that establishing liability turns on Stericycle's corporate conduct rather than on the actions of any individual customer. Also, Plaintiffs contend that they need only show *some* injury suffered as a consequence of the alleged anti-competitive behavior, and that antitrust impact is typically established for class certification purposes through expert opinion that generally accepted economic methodologies are available to demonstrate antitrust impact on a class-wide basis.

Plaintiffs claim that their expert's (Dr. Leitzinger) analysis demonstrates that antitrust impact can be established in this case using evidence that is common to members of the two classes. In addition, Plaintiffs point out that many courts have recognized a *presumption* (sometimes called the *Bogosian* short-cut) of antitrust impact in cases of alleged *per se* antitrust violations, such as price-fixing or market allocation. Here, Plaintiffs argue, the evidence is

abundant that all class members paid higher prices than they would have, absent the alleged anti-competitive conduct of Stericycle and that the differences among them is but one of degree, thus presenting no obstacle to class certification.

Regarding damages, Plaintiffs contend that the determination of antitrust damages is susceptible to class-wide proof. For class certification purposes, it is sufficient that a plaintiff present a "potentially feasible method for proving damages on a class-wide basis." In this case, Plaintiffs assert that Dr. Leitzinger has opined that damages associated with their claims in these two proposed class action cases are feasibly calculable on a class-wide basis using standard, well-accepted economic methods routinely applied in antitrust litigation.

To satisfy the "superiority" prong of Rule 23(b)(3), Plaintiffs also argue that the class action is superior to other methods of adjudicating the controversy at issue. They assert that this determination must be evaluated in light of the practical advantages of any feasible alternative avenues of adjudication–and they argue that the class mechanism is the best–and likely the only–means to afford consumer recourse for alleged antitrust violations.

Finally, Plaintiffs request that the court appoint Lerach Couglin Stoia Rudman & Robins, LLP, Bonnett Fairbourn Friedman & Balint, P.C., and Goodkind Labaton Rudoff & Sucharow, LLP as Co-Class Counsel for the Tri-State Class and the California Class, and Atkins & Shield, P.C. as Liaison Counsel for both proposed classes.

### B. Stericycle's Arguments

Stericycle argues that common proof does not predominate in this case and that Plaintiffs have utterly failed to undertake the required analysis. Stericycle maintains that the law requires

9

that the propriety of class certification be analyzed claim by claim, element by element. Stericycle contends that Plaintiffs, however, have inappropriately lumped all their claims together into an "anti-competitive soup." Further, Stericycle argues that Plaintiffs have analyzed this case as a price-fixing case, despite the fact that there are no such allegations in this case. Even if it were a price-fixing case, Stericycle argues that Plaintiffs' approach is insufficient.

As an example, Stericycle points out that neither Plaintiffs nor Dr. Leitzinger identifies the common evidence by which they intend to prove, for instance, that Intermountain Health Care, with its numerous Wasatch Front hospital and clinics, and a sole practitioner dentist in Grand Junction, Colorado–both members of Plaintiffs' putative class–were similarly affected by the allegedly anti-competitive activities and would offer the same evidence to prove their claims.

According to Stericycle, Dr. Leitzinger has failed to undertake the required evidentiary and market analysis to reach his conclusions, and he was unable at his deposition to identify common evidence that Plaintiffs would use to prove their case. Stericycle contends that Dr. Leitzinger has committed the same error he committed in another similar case, *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005). According to Stericycle, in this case, as in *Monsanto*, Dr. Leitzinger has impermissibly asked the court to rely on his *presumption* of violation and impact "without any consideration of whether the markets or the alleged [conduct] at issue here actually operated in such a manner so as to justify" the presumptions. *Id*. The district court in *Monsanto* therefore declined to certify class, and the Eighth Circuit later affirmed that decision. *Monsanto*, 400 F.3d at 570.

In comparison to Dr. Leitzinger's assumptions, Stericycle asserts that its two experts

have conducted the required analysis and have demonstrated that common proof does not predominate. One of Stericycle's experts, Dr. Adams, explains that whether and to what extent any particular consumer is impacted by the challenged activities depends on multiple factors unique to each consumer and each claim, including the customer's location, type and volume of waste, and other customer specific factors. Another of Stericycle's experts, Dr. McClave, states that the data relied on by Dr. Leitzinger do not show price increases, the purported anti-competitive effect upon which Plaintiffs rely, for more than a small fraction of any set of customers at any particular time. Stericycle contends that there is simply no common evidence that, even assuming the alleged violations occurred, every member of the proposed class was impacted.

Stericycle also argues that Plaintiffs have failed to offer a manageable and reliable method for calculating class-wide damages. Rather, they have relied on their expert's assurances that a method exists and can be developed in the future. Stericycle's expert's analysis demonstrates that proof of damages in this case is not susceptible to mechanical, formulaic calculation and individual issues will predominate, rendering the class unmanageable.

Overall, Stericycle argues that when the claims are analyzed separately, as required under the law, there is no proof that the elements of those claims, including the common elements of liability, antitrust injury, and damages, can be proven at all, let alone with predominantly class-wide proof, as required for class certification. Stericycle claims that there are multiple, relevant geographic and product markets, a wide variety of customer types, and numerous other cross-cutting issues requiring individual analysis of the competitive circumstances and pricing for

specific class members and subsets of class members.  Therefore, the motion to certify the two classes should be denied.

### C. Analysis

The question for this court is not "'whether the [Plaintiffs] have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Anderson*, 690 F.2d 796 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).  The court "may not weigh conflicting expert evidence or engage in 'statistical dueling' of experts." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2nd Cir. 1999), *cert. denied*, *sub nom Metro-North Commuter R.R. v. Norris*, 529 U.S. 1107 (2000).  The question for this court is whether Plaintiffs' expert evidence is sufficient to demonstrate that common elements of liability, antitrust injury, and damages predominate over questions affecting only individual members and that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  *See id.* at 292-93.

Plaintiffs–and their expert–however, offer nothing more than conclusory allegations, assumptions of liability and impact, and assurances of future solutions regarding damages.  They simply have not met their strict burden of proof that all the requirements of FRCP 23–specifically Rule 23(b)(3)–are clearly met.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).  Plaintiffs have not only failed to set forth the essential elements of each of their claims, but they have neglected to demonstrate that such elements are capable of proof on a class-wide basis.  Plaintiffs instructed their expert to ignore issues of liability and causation, and thus to *assume* impact for all their

causes of action. Defendants' experts, on the other hand, have set forth indepth analyses of the evidence that will be required for each specific claim, underscoring the necessity of the individualized evidence that will be required in this case. Given Plaintiffs' utter lack of evidence regarding liability and causation, this court cannot certify the proposed classes in this case.

Moreover, even as to impact and damages, the court finds that Plaintiffs have failed to carry their burden in demonstrating that these elements are susceptible to class-wide proof. Regarding the issue of common impact, Plaintiffs' expert merely *assumed* what needed to be demonstrated to establish the propriety of class certification: He assumed that an important source of competition (BFI) was eliminated by each of the claimed antitrust offenses for all class members. Although Dr. Leitzinger sets forth four categories of "common evidence," none is supported with actual evidence or reasoned analysis.

Specifically, Plaintiffs have failed to establish that class-wide evidence can be used to prove their 1999 merger claim in the Tri-State area. Defendants have, by contrast, demonstrated that common proof is not possible on the market definition and market share/concentration elements of Plaintiffs' liability case and that Plaintiffs cannot prove their case without an exhaustive market-by-market, customer-by-customer, product-by-product, time period-by-time period inquiry. Analyses will have to be conducted of local markets, concentration in those markets, entry and conditions for entry in those markets, and efficiencies in those markets. Moreover, Plaintiffs also fail to demonstrate that there is common, class-wide evidence of antitrust impact.

Regarding Plaintiffs' attempted monopolization claim, their claims based on the

covenants not to compete in the 1997 Asset Purchase Agreements, their Tri-State monopolization claim, their Section 7 California merger claim, and their California monopolization claim, Plaintiffs have similarly failed to demonstrate that liability and impact may be proven class-wide using common evidence.

Thus, Plaintiffs have offered no analysis of how the putative class members will prove the elements of each of several rule of reason claims with the same evidence. There is no discussion whatsoever of causation, and Plaintiffs' proffered expert testimony is nothing more than an assumption that all class members were impacted, with a few suggestions about possible damages approaches.

Although Plaintiffs disagree, the court finds that Plaintiffs' approach is similar to that found inadequate by the Eastern District of Missouri and the Eighth Circuit in *Monsanto*, a case in which Dr. Leitzinger was also the plaintiffs' expert:

> Simply put, plaintiffs *presume* class-wide impact without any consideration of whether the markets or the alleged conspiracy at issue here actually operated in such a manner so as to justify that presumption. Dr. Leitzinger *assumes* the answer to this critical issue and plaintiffs in turn, have asked to Court to rely on this *conclusion* as support for class certification. I cannot "presume" or "assume" much less "conclude" class-wide impact here because the evidence submitted during the class certification hearing demonstrates that such a presumption would be improper.

*Sample v. Monsanto Co.*, 218 F.R.D. 644, 650 (E.D. Mo. 2003) (emphasis added), *aff'd sub nom., Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005). Here, the court cannot "assume," much less conclude that there will be class-wide impact, particularly in light of the evidence submitted by Stericycle, which demonstrates that such a presumption would be improper.

Finally, Dr. Leitzinger simply offers three boilerplate approaches to damages that may or may not be applicable in this case. As he stated in his deposition:

> Well, I–I haven't come as far as arriving at a–a particular damage model and indeed I'm not sure–I don't know that the subject has ever come up, but I'm not–it's not absolutely that I've been given the assignment to analyze damages in the case should proceed to that stage. So my–my conclusions about damages are simply that, as described in the report, that there are–based on my analysis of the–of the issues in the case and the market, there are potentially a number of ways that he damage analysis might be performed here on a–on a class-wide basis.

Leitzinger Depo. at 244-45. Indeed, Dr. Leitzinger does not offer a specific method to calculate damages on a class-wide basis in this case; rather, he purports to provide only a few "possibilities" that "may or may not work":

> Q:   But you can't testify sitting here that you know that any of these three methods would be successful, [with] what you know now; true?
>
> A.   I–that's correct, I can't.

*Id.* at 269.

The parties have differing views on whether this is a *per se* price-fixing case, with Plaintiffs relying predominantly on price-fixing cases, and Defendants claiming this is not a *per se* price-fixing case, and thus, a much more precise analysis is required. Regardless, even in price-fixing cases, plaintiffs are required to demonstrate that a reliable method exists for calculating damages class-wide. Plaintiffs essentially opine that there is a method, they just do not know which method, and they have provide no evidence that any such method would actually work. It is simply not enough that Plaintiffs merely promise to develop in the future

15

some unspecified workable damage formula.  A concrete, workable formula must be described before certification is granted.  *Windam v. American Brands, Inc.,*, 565 F.2d 59, 70 (4th Cir. 1977) (noting that court "should not certify the class merely on the assurance of counsel that some solution will be found."); *Law v. NCAA*, 167 F.R.D. 178, 15 (D. Kan.1996) ("Naked assurances that a manageable method for dealing with individual issues will be found and presented at trial" are not sufficient to meet the burden of proof at class certification).   The court is simply not persuaded that a reliable formula for damages can be devised in this case.

Thus, Plaintiffs have not satisfied their Rule 23(b)(3) burden of demonstrating that common questions will predominate over questions affecting only individual members.  Instead, it appears that the opposite is true.   Accordingly, the court is not persuaded that these putative class actions would be manageable as class actions, and therefore is not convinced that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Consolidated Motion for Class Certification is DENIED.

DATED this 3rd day of March, 2006.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge